**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)**

| | |
|---|---|
| PRIMORIS T&D SERVICES, LLC, as assignee and successor-in-interest to TELCON SERVICES, LLC, <br><br> Plaintiff <br> v. <br><br> PROSOURCE TECHNOLOGIES, LLC, <br><br> Defendant/Third-Party Plaintiff <br><br> v. <br><br> CIVIL & ENVIRONMENTAL CONSULTANTS, INC., <br><br> Third-Party Defendant. | Civil Action No. 8:25-cv-03314-LKG |

## DEFENDANT PROSOURCE TECHNOLOGIES, LLC'S THIRD-PARTY COMPLAINT

Defendant ProSource Technologies, LLC ("ProSource"), by its attorneys Kristina L. Pywowarczuk, Julian A. Miller, and McAngus Goudelock & Courie, respectfully submits this Third-Party Complaint against Civil & Environmental Consultants, Inc. ("CEC"), and in support thereof states as follows:

## JURISDICTION AND VENUE

1. This action was timely and properly removed from the Circuit Court for Montgomery County, Maryland, to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper pursuant to 28 U.S.C. §§ 1441 and 1446, as this Court embraces the Circuit Court for Montgomery County, Maryland. The underlying acts or omissions that form the basis of these claims also occurred in Montgomery County, Maryland.

## PARTIES

4. Third-Party Plaintiff ProSource Technologies, LLC, is a limited liability company with members residing in Minnesota and California.

5. Third-Party Defendant Civil & Environmental Consultants, Inc. is a corporation incorporated in Texas with its principal place of business in Pennsylvania.

## BACKGROUND

6. Telcon Services, LLC ("Telcon") filed suit against ProSource on July 8, 2025, in the Circuit Court for Montgomery County, Maryland ("State Court Action"), asserting claims for breach of contract and common law indemnification.

7. On August 22, 2025, Telcon transferred its contract and related claims in the State Court Action to Primoris T&D Services, LLC ("Primoris").

8. On September 4, 2025, Primoris substituted itself as Plaintiff in the State Court Action.

9. On October 6, 2025, ProSource timely and properly removed the State Court Action to this Court.

10. ProSource now files this Third-Party Complaint against CEC.

## FACTS

11. Telcon, as one of the two entities comprising InfraPartners, LLC, served as the project manager for construction of Quantum Loophole, Inc.'s ("QLoop") 38-mile fiber network ring in Maryland and Virginia, referred to as Project Sage Fiber Optic Line ("Project Sage").

12.     Project Sage included work on First Energy Corp.'s easement (the "First Energy Easement"), parts of which are referred to as "Segment 4".

13.     On January 24, 2022, ProSource entered into an agreement with Telcon ("Telcon Agreement") to provide title work, easement acquisition, mapping, and permitting services for a small segment of Project Sage in Virginia and Maryland.

14.     ProSource's scope of work under the Telcon Agreement did not include any services on the First Energy Easement adjacent to the real property owned by Lewis Legacy LLC (the "Lewis Legacy Property"), the location at issue in this action.

15.     ProSource's scope of work under the Telcon Agreement did not include any boundary surveying or easement staking work.

**_Civil & Environmental Consultants July 2022 Work_**:

16.     Five months after entering into the agreement, in or around June 2022, at Telcon's last-minute request, ProSource agreed to help Telcon find a licensed survey company in Maryland for a segment of the project, distinct from the title work and easement acquisition work ProSource provided.

17.     To help Telcon, on June 30, 2022, ProSource asked CEC whether it had surveyors licensed in Maryland for work around the Frederick area.

18.     CEC responded in the affirmative.

19.     In turn, ProSource informed Telcon that CEC was available for surveying and staking work on a segment of Project Sage outside the scope of the Telcon Agreement.

20.     On July 8, 2022, Telcon provided ProSource with the drawings, which it forwarded to CEC.

21.     At Telcon's request, ProSource entered into an agreement with CEC on July 20, 2022 (the "CEC Agreement"). The scope of the CEC Agreement included work conducted by CEC on July 12, 13, and 21, 2022, including boundary surveying and easement staking work for Project Sage.

22.     The Section 11 of the CEC Agreement is an Insurance Provision, stating that:

CEC will maintain Workmen's Compensation Insurance as required by state law, General Liability Insurance for bodily injury and property damage with a limit of $1,000,000 per occurrence and an aggregate limit of $2,000,000 and Automobile Liability with a limit of $1,000,000. Professional liability will be provided with a limit of $1,000,000 per claim and $1,000,000 in the aggregate, if applicable. [ProSource] and/or the property owner will be listed as additional insured for General Liability Insurance upon [ProSource]'s written request.

23.     The CEC Agreement also included an Indemnification Provision, Section 12.3, stating that:

CEC shall indemnify and hold harmless [ProSource] from and against any and all claims, damages or liability to the extent caused by the negligent performance of services under this AGREEMENT by CEC, including injuries to employees of CEC.

24.     CEC also agreed to perform its services consistent with the professional skill and care ordinarily provided by professionals practicing in the same or similar locality under the same or similar circumstances.

### *Civil & Environmental Consultants November 2022 Work*:

25.     On October 26, 2022, Telcon, without including ProSource, approached CEC seeking additional survey and staking, which later expanded to the north bore and Segment 4 of Project Sage.

26.     Telcon, not ProSource, sent CEC the title reports associated with this request.

27.     CEC responded to Telcon explaining that it would review the title reports and get back to them.

28.     On November 3, 2022, Telcon followed up with CEC inquiring whether CEC could conduct the work.

29.     In response to Telcon's inquiry, CEC emailed ProSource explaining that it could not conduct the newly requested staking work without providing survey boundary work.

30.     ProSource then emailed Telcon that CEC was requesting the boundary data.

31.     On November 10, 2022, Telcon emailed CEC the boundary data.

32.     On November 11, 2022, CEC emailed Telcon identifying 45 properties that required surveying to determine the boundary line of the First Energy Easement. The email specifically included the Lewis Legacy Property.

33.     That same day, Telcon asked CEC whether it could begin its work the next week.

34.     On November 16, 2022, Telcon sent Comma-Separated Values data directly to CEC, via email, related to the requested work.

35.     On November 16, 2022, Telcon emailed the Keyhole Markup Language Zipped geographic data and a link to the drawings for the Segment 4 directly to CEC.

36.     ProSource was merely cc'd on select communications related to the transfer of information between Telcon and CEC.

37.     ProSource did not oversee the surveying and staking work performed by CEC for Telcon in November 2022, nor was that work defined within the scope of the Telcon Agreement for title work, easement acquisition, mapping, and permitting services on Project Sage.

38.     In late November, CEC began staking the right-of-way line of the easement based on the information provided by Telcon.

39.     On February 23, 2023, Primoris installed QLoop's underground communication system on Segment 4 where CEC provided boundary surveying and easement staking work.

40.     Nine months later, on August 4, 2023, Telcon was informed that the underground conduit had been improperly installed by Primoris on areas within the Lewis Legacy Property.

***Lewis Legacy's Claims Against QLoop***:

41.     Lewis Legacy claimed monetary damages against Primoris, QLoop, and Telcon as a result of the improperly installed conduit.

42.     On October 1, 2024, QLoop agreed to pay $825,000 and remove/reinstall the conduit within the easement, in full settlement of Lewis Legacy's claims.

43.     QLoop then sought indemnification from Telcon.

44.     On July 2, 2024, Telcon agreed to credit QLoop, $175,000 in the form of an offset to owing construction management fees, as contribution to the settlement payment to Lewis Legacy.

45.     On February 12, 2024, and December 19, 2024, Telcon sent letters to ProSource and CEC demanding indemnification for all claims, losses, or damages asserted against it by QLoop.

46.     Telcon claimed damages in the amount of $1,698,659.46 for: 1) QLoop's settlement payment; 2) costs to remove the improperly installed conduit and reinstall the conduit; and 3) additional costs and legal expenses.

47.     On April 15, 2025, ProSource sent a tender letter to CEC based on the CEC Agreement, demanding that it indemnify ProSource against the claims asserted by Telcon and to put its insurance carriers on notice of the claims.

***Primoris's Claims against ProSource***:

48.     Primoris' Complaint asserts two counts: 1) breach of contract; and, 2) common law indemnification, for work performed on July 13, 2022.

49. Primoris asserts that the Telcon Agreement was breached when the land survey work was not completed as required under the Telcon Agreement.

50. ProSource maintains that the scope of the Telcon Agreement did not include boundary surveying or easement staking.

51. As to common law indemnification, Primoris asserts that ProSource owed a duty to all interested parties to ensure it performed professional services without any errors or omissions.

52. Primoris further asserts that ProSource's failure to perform its professional services constitutes a breach of general professional and industry standards regarding the performance of land survey work.

53. ProSource maintains that its professional services did not include boundary surveying or easement staking work.

## COUNT I – Breach of Contract

54. The allegations set forth in Paragraphs 1-53 are incorporated herein by reference.

55. To the extent the improper work is covered by the CEC Agreement, CEC breached its contract with ProSource.

56. ProSource and CEC entered into the CEC Agreement on July 20, 2022, for boundary surveying and easement staking work performed by CEC.

57. CEC agreed to perform its services consistent with the professional skill and care ordinarily provided by professionals practicing in the same or similar locality under the same or similar circumstances.

58.     CEC's work included but was not limited to: 1) locating and verifying survey control provided; 2) staking centerline of alignment at specified locations; 3) staking the erosion and sediment controls; and 4) staking the bore pits.

59.     The CEC Agreement set out the hourly rates at which CEC would be paid for its services.

60.     Any and all claimed damages by Primoris in its Complaint resulted directly from CEC's services.

61.     CEC has materially breached the terms and conditions of the CEC Agreement by failing to properly survey and stake the associated properties with the professional skill and care ordinarily provided by professionals practicing in the same or similar locality.

62.     The damages sought by Primoris are a direct result of CEC's improper boundary surveying and easement staking and flow naturally and immediately from CEC's breach of the CEC Agreement.

63.     ProSource made a demand upon CEC for both indemnification and insurance coverage.

64.     CEC has materially breached the contract by failing to indemnify and hold ProSource harmless for the resulting property damage as outlined in Section 12.3 of the CEC Agreement.

65.     CEC also materially breached the contract by failing to provide insurance coverage as to ProSource for property damage liability, as set forth in Section 11 of the CEC Agreement.

66.     As a direct result of CEC's failure to perform its services in compliance with the CEC Agreement, and its subsequent refusal to indemnify ProSource, ProSource has been

damaged, and continues to incur damages, including but not limited to legal fees, defense costs, being forced to respond to litigation due to CEC's actions, and, should Primoris's allegations be substantiated, damages in the amount of $1,669,208.96.

<strong><u>COUNT II – Contractual Indemnification</u></strong>

67.    The allegations set forth in Paragraphs 1 through 66 are incorporated herein by reference.

68.    To the extent the improper work is covered by the CEC Agreement, ProSource is entitled to contractual indemnification from CEC.

69.    The CEC Agreement was entered into for CEC to provide boundary surveying and easement staking services for Project Sage.

70.    The CEC Agreement included an indemnification clause.

71.    Pursuant to Section 12.3 of the CEC Agreement, CEC agreed to indemnify and hold ProSource harmless from and against any and all claims, damages, or liability to the extent caused by the negligent performance of services under the agreement by CEC.

72.    Primoris's claims asserted against ProSource arise out of the negligent performance of CEC's boundary surveying and easement staking work under the CEC Agreement.

73.    In providing its boundary surveying and easement staking work, CEC failed to properly stake the boundaries of the Lewis Legacy Property that were adjacent to the First Energy Easement.

74.    If Primoris's allegations are established, all damages were caused by CEC's negligent performance.

75.    CEC is liable to ProSource and is required to indemnify it for any damages ProSource suffered and will continue to suffer.

76.    ProSource made a demand to CEC for indemnification against Plaintiff's claims. CEC failed to accept the tender and, therefore, is in breach of its contractual obligation set forth in Section 12.3 of the CEC Agreement.

## COUNT III – Contribution

77.    The allegations set forth in Paragraphs 1 through 76 are incorporated herein by reference.

78.    Primoris claims that ProSource breached a duty in providing boundary surveying and easement staking work and thereby caused it damage.

79.    Primoris's common law indemnification claim against ProSource is rooted in negligence theory.

80.    Primoris's damages, if any, are the factual and proximate result of negligence of CEC, without any negligence on the part of ProSource.

81.    To the extent any boundary surveying or easement staking work was performed negligently, this was due to the sole and active negligence of CEC.

82.    ProSource did not perform any boundary surveying work or easement staking on any area of Project Sage or Segment 4.

83.    ProSource is entitled to contribution from CEC for any judgment which Primoris recovers against ProSource.

## COUNT IV – Common Law Indemnification

84.    The allegations set forth in Paragraphs 1-83 are incorporated herein by reference.

85.     To the extent any improper work is not covered by the CEC Agreement, ProSource is entitled to indemnification from CEC as its improper and negligent work actually caused the claimed damage.

86.     ProSource denies any active or minor negligence in connection with the services performed on Project Sage or Segment 4. To the extent liability is found, it is based solely on the improper work of CEC.

87.     To the extent CEC was an agent of ProSource, indemnification is not precluded as CEC was primarily liable for performing the negligent work.

88.     Principles of equity and fairness entitle ProSource to common law indemnification from CEC, as CEC was solely responsible for the acts and omissions that give rise to Primoris's claims.

89.     If Primoris's allegations are established, all damages were caused by CEC, and ProSource is entitled to full indemnification from CEC.

WHEREFORE, Third-Party Plaintiff ProSource Technologies, LLC requests that this Court:

1. Enter judgment in favor of ProSource Technologies, LLC and against Third-Party Defendant Civil & Environmental Consultants, Inc. on all counts;

2. Award ProSource Technologies, LLC damages in an amount to be proven at trial, but not less than one million six hundred sixty-nine thousand two hundred eight dollars and ninety-six cents ($1,669,208.96), including damages arising from Civil & Environmental Consultants, Inc.'s breach of its contractual obligation to indemnify ProSource Technologies, LLC and provide it with the applicable insurance coverage;

3. Order Civil & Environmental Consultants, Inc. to indemnify ProSource Technologies, LLC for all claims, damages, or liability, including reasonable attorneys' fees and costs, incurred or to be incurred as a result of the claims asserted in this action;

4. Find that Civil & Environmental Consultants, Inc. is responsible for contribution as to any judgment which is recovered against ProSource Technologies, LLC.

5. Grant such other and further relief as the Court deems appropriate.

**RESPECTFULLY SUBMITTED,**
**PROSOURCE TECHNOLOGIES, LLC**

By Counsel,

/s/ *Julian A. Miller*
Julian A. Miller (Bar No. 31519)
Kristina L. Pywowarczuk (Bar No. 31743)
McAngus Goudelock & Courie
1925 Ballenger Ave, Ste. 560
Alexandria, VA 22314
Mail: PO Box 30307
Charlotte, NC 28230
Phone: (703) 822-4796
Fax: (703) 997-6274
kristina.pywowarczuk@mgclaw.com
julian.miller@mgclaw.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on October 20, 2025, with the Clerk of Court using the CM/ECF system, causing it to be served and providing notice to all counsel of record.

/s/ *Julian A. Miller*
Julian A. Miller (Bar No. 31519)